UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------- X
MURRAY BRAUN,
128 North McCadden Place
Los Angeles, CA 90004

                        Plaintiffs,              Case no. 20-cv-2613


                  -against-


UNITED STATES OF AMERICA;

ATTORNEY GENERAL WILLIAM P. BARR,
950 Pennsylvania Ave. NW
Washington, DC 20530;

UNITED STATES DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

SECRETARY OF THE TREASURY STEVEN T.
MNUCHIN,
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220;

UNITED STATES DEPARTMENT OF THE
TREASURY,
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220;

UNITED STATES VICTIMS OF STATE SPONSORED
TERRORISM FUND,
c/o Deborah L. Connor
Chief, Money Laundering and Asset Recovery Section
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

INTERIM SPECIAL MASTER DEBORAH L.
CONNOR,
Chief, Money Laundering and Asset Recovery Section
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001.

Defendants.

---------------------------------------------------------------------- X

## COMPLAINT

Plaintiff, by his counsel, complain of the Defendant, and hereby alleges for his Complaint as follows:

## INTRODUCTION

1.     This action raises issues of first impression, calling upon this Court to construe several aspects of the United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144 ("USVSST Act" or "Act") (formerly codified as 42 U.S.C. § 10609), as modified by the: United States Victims of State Sponsored Terrorism Fund Clarification Act, P.L. 116-69, Title VII enacted November 21, 2019 ("Clarification Act").

2.     The USVSST Act creates the United States Victims of State Sponsored Terrorism Fund ("USVSST Fund" or "Fund"), into which funds deriving from criminal forfeitures, civil penalties, fines, and civil forfeitures, relating to violation of sanctions regulations, as well as an initial allocation from the Treasury,[1] are deposited. The Fund then distributes these funds *pro rata* to victims of state-sponsored terrorism holding qualifying judgments against state sponsors

---

[1] The initial allocation corresponded to a portion of the money the Government had received from a large fine paid by Bank Paribus for violating the sanctions regime against Iran.

of terrorism and also to hostages held by Iran following the seizure of the United States embassy in Teheran in 1979.

3.      In this action, Plaintiff seeks a declaratory judgment construing a provision of the Act modified in 2019 by the Clarification Act which increased the percentage of civil penalties, fines, and forfeitures required to be deposited into the Fund to determine whether the increased percentage is retroactive to the original effective date of the Act, as the statutory language reads, or whether the increased percentage only applies prospectively from the effective date of the Clarification Act.

4.      Plaintiff further seeks a declaratory judgment requiring Attorney General Barr to appoint a Special Master going forward if there is more than $100 million in the Fund, rather than proceeding with an "Interim Special Master" as the Fund is doing at the present, without any basis in the Act for informal interim special masters.

5.      Plaintiff further seeks a declaratory judgment requiring Defendants to proceed with a distribution in 2021 if there is more than $100 million in the Fund, as required by the Act.

6.      Lastly, Plaintiff seeks a declaratory judgment holding that the third round distributions that were due to be paid in 2020 were required to be paid on or before May 19, 2020, and should therefore be paid immediately, and that distributions in future rounds are required to be paid on or before January 1 of each year.

7.      Plaintiff, and the other 13,411 claimants who have been deemed eligible to receive distributions from the Fund, are all victims of terrorism who were either killed, maimed, or held hostage or had their family members killed, maimed, or held hostage, or were hostages held by Iran for 444 days who never received any compensation. Each one of them has fought a long battle in the Courts to achieve some measure of justice against the state sponsors of

terrorism who victimized them, and has had to wait even longer to actually be able to enforce the judgments ultimately issued in their favor. The Fund was created by Congress to help these victims obtain compensation for the wrongs that they have suffered. Construing the Act governing the Fund as prayed for in this action will enable these victims to receive the compensation Congress intended, and to receive it expeditiously, as Congress intended.

## JURISDICTION AND VENUE

8.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.    This Court further has subject matter jurisdiction as this action seeks a declaratory judgment under 28 U.S.C. § 2201.

10.    This Court further has subject matter jurisdiction pursuant to 5 U.S.C. § 702, as plaintiff has suffered a legal wrong because of agency action and has been adversely affected or aggrieved by agency action, and plaintiff seeks relief other than money damages and states a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity.

## THE PARTIES

11.    Plaintiff Murray Braun was a plaintiff in *Braun v. Islamic Republic of Iran,* 15-cv-1136 (BAH) and in that action obtained a money judgment including $2.5 million for compensatory damages against the Islamic Republic of Iran ("Iran"), a state sponsor of terrorism, as well as an award of punitive damages, such judgment having been entered by this Court (Howell, *C.J.*) on January 10, 2017.

12.     As a victim of terrorism holding a judgment for compensatory damages against Iran, Plaintiff is eligible to receive distributions from the Fund, and in fact Plaintiff has applied to the fund for compensation, has been determined by the USVSST Fund to be eligible for distributions, has already received a distribution in the Fund's second round of distributions, and is eligible to receive future distributions.

13.     Defendant United States of America ("USA") is the government of the United States of America.

14.     Defendant William P. Barr is the Attorney General of the United States, and is sued herein in his official capacity.

15.     Defendant United States Department of Justice ("DOJ") is a department of the government of Defendant USA.

16.     Defendant Steven T. Mnuchin is the Secretary of the Treasury of the United States, and is sued herein in his official capacity.

17.     Defendant United States Department the Treasury ("DOT") is a department of the government of Defendant USA.

18.     Defendant United States Victims of State Sponsored Terrorism Fund is a fund "established in the Treasury," 34 U.S.C. § 20144(e)(1), and as such is part of the Treasury, but is named in this action as a nominal defendant for the sake of clarity.

19.     Upon information and belief, Defendant Deborah L. Connor is employed by Defendant DOJ as the Chief of the Money Laundering and Asset Recovery Section, and holds herself out as the "Interim Special Master" of the USVSST Fund, although the statute that created the USVSST Fund makes no provision for interim special masters and requires the Attorney General to appoint a Special Master.

**THE STATUTE AT ISSUE**

20.     A copy of the original version of the USVSST Act effective as of December 18, 2015 and until November 20, 2019 is annexed hereto as Exhibit A.

21.     A copy of the Clarification Act enacted and effective as of November 21, 2019 is annexed hereto as Exhibit B.

22.     A copy of the current version of the USVSST Act, effective November 21, 2019, incorporating the amendments contained in the Clarification Act, is annexed hereto as Exhibit C.

**FIRST CLAIM FOR RELIEF
FOR A DECLARATORY JUDGMENT DETERMINING THE
PERCENTAGE OF CIVIL PENALTIES, FINES, AND FORFEITURES
REQUIRED TO BE DEPOSITED INTO THE FUND FOR THE PERIOD
OF DECEMBER 18, 2015 – NOVEMBER 21, 2019**

23.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

24.     Enacted on December 18, 2015, the Act "established in the Treasury a fund to be designated as the United States Victims of State Sponsored Terrorism Fund," 34 U.S.C. § 20144(e)(1), and established funding for it, including an appropriation of $1.025 billion for the Fund in FY 2017. § 20144(e)(5). In addition, the Act mandates that certain forfeiture proceeds, penalties, and fines be deposited by Defendant DOT into the Fund if "forfeited or paid to the United States after the date of [the Act's] enactment." These funds are to come from civil and criminal matters involving prohibited transactions with state sponsors of terrorism. § 20144(e)(2). The Act, as amended, provides that that the Fund will continue operations until 2030, § 20144(e)(6). Thus, the Fund may continue to accumulate and distribute funds over its 15-year life.

25.     While the Fund is "in the Treasury," § 20144(e)(1), it is required to be administered by a special master to be appointed by the Attorney General who is to be compensated from the Fund, § 20144(b)(1)(C), and that special master is authorized to utilize a designated number of Department of Justice personnel, § 20144(b)(1)(B).

26.     The Act provides that after the singular initial allocation made in the first year of the USVSST Fund's existence, the USVSST Fund is funded as follows:

**(2) Deposit and transfer**

Beginning on December 18, 2015, the following shall be deposited or transferred into the Fund for distribution under this section:

**(A) Forfeited funds and property[2]**

**(i) Criminal funds and property**

All funds, and the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a criminal penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related criminal conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

**(ii) Civil funds and property**

Seventy-five percent[3] of *all funds*, and seventy-five percent of the *net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or*

---

[2] In a separate but related litigation arising under the Freedom of Information Act, Plaintiff's counsel is seeking to obtain information about funds qualifying for transfer to the USVSST Fund under 34 U.S.C. § 20144(e)(2)(a)(i) and (ii). *See Tolchin v. Department of the Treasury,* DDC Case no. 20-cv-2201 (BAH).

[3] At the time the Act was enacted, this provision said 50%. It was amended in 2019 to say 75%.

*prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.*

**(B) Transfer into Fund of certain assigned assets of Iran and election to participate in Fund**

**(i) Deposit into Fund of assigned proceeds from sale of properties and related assets identified in In Re 650 Fifth Avenue & Related Properties**

**(I) In general**

Except as provided in subclause (II), if the United States receives a final judgment forfeiting the properties and related assets identified in the proceedings captioned as In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), *the net proceeds (not including the litigation expenses and sales costs incurred by the United States) resulting from the sale of such properties and related assets* by the United States shall be deposited into the Fund.

**(II) Limitation**

The following proceeds resulting from any sale of the properties and related assets identified in subclause (1) shall not be transferred into the Fund:

(aa) The percentage of proceeds attributable to any party identified as a Settling Judgment Creditor in the order dated April 16, 2014, in such proceedings, who does not make an election (described in clause (iii)) to participate in the Fund.

(bb) The percentage of proceeds attributable to the parties identified as the Hegna Judgment Creditors in such proceedings, unless and until a final judgment is entered denying the claims of such creditors.

> **(ii) Deposit into Fund of assigned assets identified in Peterson v. Islamic Republic of Iran**
>
> If a final judgment is entered in Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y.), awarding the assets at issue in that case to the judgment creditors identified in the order dated July 9, 2013, those assets shall be deposited into the Fund, but only to the extent, and in such percentage, that the rights, title, and interest to such assets were assigned through elections made pursuant to clause (iii).

34 U.S.C. § 20144(e)(2) (italics added).

27.     In the original version of the Act, prior to the November 21, 2019 enactment of the Clarification Act, the percentage contained in 34 U.S.C. § 20144(e)(2)(ii) was 50%, so the paragraph read as follows:

> Fifty percent of all funds, and seventy-five percent of the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

34 U.S.C. § 20144(e)(2)(ii) (prior to Nov. 21, 2019 amendment by Clarification Act) (emphasis added).

28.     After the November 21, 2019 enactment of the Clarification Act, the percentage contained in 34 U.S.C. § 20144(e)(2)(ii) was 75%, so the paragraph now reads as follows:

> Seventy-five percent of all funds, and seventy-five percent of the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related conspiracy, scheme, or other Federal offense

arising from the actions of, or doing business with or acting on behalf of, a state
sponsor of terrorism.

34 U.S.C. § 20144(e)(2)(ii) (after Nov. 21, 2019 amendment by Clarification Act) (emphasis
added).

29.     The only change between these two versions was the change from 50% to 75%. In
all other respects this paragraph of the statute remained unchanged.

30.     One important aspect of this paragraph of the Act that remained unchanged after
the enactment of the Clarification Act is the date, December 18, 2015, which defines the start
date of the universe of penalties, fines, and forfeitures as to which the specified percentage must
be paid into the Fund.

31.     The plain meaning of the statutory language cited above is that the specified
percentage (first 50%, now 75%) of the enumerated categories of civil penalties, fines, and
forfeitures after December 18, 2015 must be deposited into the Fund.

32.     When the Clarification Act was enacted and became effective, on November 21,
2019, it increased the percentage from 50% to 75%, it left the December 18, 2015 date in the
statute unchanged.

33.     The clear statutory requirement is thus that after the enactment of the Clarification
Act, Defendant Treasury was required to deposit into the Fund 75% of the enumerated categories
of civil penalties, fines, and forfeitures going forward, and also to retroactively deposit into the
Fund an additional 25% of all such civil penalties, fines, and forfeitures going back to December
18, 2015.

34.     The plain meaning of the statute on this point is clear beyond any possibility of
doubt.

35.     Despite the statutory language described above, Defendants Fund and O'Connor have taken the position that the increase from 50% to 75% only applies going forward from the effective date of the Clarification Act. This was stated explicitly in an email exchange with Anish Mathur, Esq., Attorney Advisor to the USVSST Fund, Money Laundering and Asset Recovery Section, Criminal Division, United States Department of Justice:

> The Clarification Act provides: "(d) APPLICABILITY.—This section and the amendments made by this section shall take effect on the date of enactment of this Act." Pub. L. No. 116-69, div. B, title VII, § 1701(d) (Nov. 21, 2019). This statutory provision requires prospective application of the changes to the provision regarding deposits in the Fund.

(Email from Anish Mathur, Esq., June 25, 2020) (Exhibit D).

> Because the Clarification Act included the specific provision directing when the amendments to the statute take effect, as we indicated, the changes to the percentage of civil case proceeds took effect on the date of its enactment.

(Email from Anish Mathur, Esq., July 7, 2020) (Exhibit D).

36.     The same position is articulated on the Fund's website:

> For criminal matters, all funds and the net proceeds from the sale of property from such violations must be deposited in the USVSST Fund. For civil matters, effective on November 21, 2019, the enactment date of the Clarification Act, seventy-five percent of all funds, and seventy-five percent of all proceeds from the sale of property, must be deposited into the USVSST Fund. From December 18, 2015 until November 20, 2019 (the date of the Clarification Act), for civil matters, one-half of all funds, and one-half of the net proceeds from the sale of property, forfeited or paid to the United States after, qualified for deposit into the USVSST Fund.

http://www.usvsst.com/deposits.php (last viewed Sept. 9, 2020) (Exhibit E).

37.     Defendant Treasury has for two-and-a-half years failed to comply with a Freedom of Information Act request that sought documentation about the criminal forfeitures, civil

penalties, fines, and civil forfeitures that are supposed to be deposited into the Fund. *See Tolchin v. Department of the Treasury,* DDC Case no. 20-cv-2201 (BAH).

38.     The Fund's position advocated by Mr. Mathur is incorrect as the effective date of the Clarification Act does not negate the explicit language of the statute, which raised the percentage from 50% to 75% but left the date parameter unchanged.

39.     Regardless of these statements made on behalf of the Fund administration, pursuant to the Act Defendant Treasury was required to deposit the additional 25% into the Fund upon the enactment of the Clarification Act.

40.     The Clarification Act amended the percentage from 50% to 75%, but left the date in the same clause untouched, so that the effect of the amendment was to require the deposit into the Fund of another 25% of enumerated categories of civil penalties, fines and forfeitures retroactive to December 18, 2015. Any other reading is not consistent with the language of the statute.

41.     The difference is very significant: if the additional 25% is deposited retroactively into the Fund it will come to approximately $500 million, which is enough to entitle Plaintiff and each other victim of terrorism eligible to receive distributions from the Fund to a significant distribution.

42.     The email exchange with Mr. Mathur (Exhibit D) makes it clear that an impasse has been reached with the Defendants on this issue, and accordingly a declaratory judgment determining the proper interpretation of the statute is necessary.

43.     Plaintiff therefore prays that the Court issue a declaratory judgment holding that 34 U.S.C. § 20144(e)(2)(ii) as amended requires that Defendant Treasury deposit an amount equal to:

> 25% of all funds, and seventy-five percent of the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism,

34 U.S.C. § 20144(e)(2)(ii), into the Fund, retroactively to include the period between

December 18, 2015 through November 21, 2019.

## SECOND CLAIM FOR RELIEF
### FOR A DECLARATORY JUDGMENT DECLARING THAT THE FUND IS REQURIED TO, AND MANDATING THAT THE FUND, DISTRIBUTE THE ADDITIONAL 25% THAT IS THE SUBJECT OF THE FIRST CLAIM FOR RELIEF AS A SUPPLEMENTAL THIRD ROUND DISTRIBUTION

44.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

45.     If Plaintiff prevails on the first claim for relief herein, Defendant Treasury will be required to deposit in to the Fund the an amount equal to:

> 25% of all funds, and seventy-five percent of the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism,

34 U.S.C. § 20144(e)(2)(ii).

46.     The funds at issue in the first claim for relief should have been deposited into the Fund upon the effective date of the Clarification Act, November 21, 2019, and should have been in the Fund prior to any third round distribution being made.

47.     By all rights the funds at issue in the first claim for relief should have been included in the third round distribution.

48.     Defendants' failure to deposit the funds at issue in the first claim for relief into the Fund upon the effective date of the Clarification Act can only be remedied if the Defendants make a supplemental distribution to be treated as part of the third round distribution. Leaving the money in the Fund to be distributed in future rounds does not restore things to where they should have been since by the time there is a fourth round distribution there are likely to be additional newly eligible claimants, so the pro rata distribution will be different. Also, the Fund has stated there will be no distribution in 2021, and that the next potential distribution will be in 2022, which means that if the funds at issue in the first claim for relief are not distributed as a supplemental distribution part of the third round the claimant terror victims will not receive this money that they should have already received for approximately two years.

49.     Plaintiff therefore prays that the Court enter an order declaring that the funds at issue in the first claim for relief must be distributed forthwith part of a supplemental third round distribution, and pursuant to 5 U.S.C. § 702 mandating that the Defendant Fund make such a supplemental third round distribution forthwith.

### THIRD CLAIM FOR RELIEF
### FOR A DECLARATORY JUDGMENT DECLARING THAT
### DEFENDANT BARR IS REQUIRED TO, AND A MADATORY
### INJUNCTION COMPELLING HIM TO, APPOINT A SPECIAL MASTER
### AND TO MAKE A DISTRIBUTION IN 2021 IF THERE IS MORE THAN
### $100 MILLION IN THE FUND

50.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

51.     The USVSST Act provides that whenever there is more than $100 million in the Fund, the Attorney General is required to appoint a Special Master:

**(b) Administration of the United States Victims of State Sponsored Terrorism Fund**

    **(1) Administration of the Fund**

    **(A) Appointment and terms of Special Master**

        **(i) Initial appointment**

        Not later than 60 days after December 18, 2015, the Attorney General shall appoint a Special Master. The initial term for the Special Master shall be 18 months.

        **(ii) Additional terms**

        Thereafter, each time there exists funds in excess of $100,000,000 in the Fund, the Attorney General shall appoint or reappoint a Special Master for such period as is appropriate, not to exceed 1 year. In addition, if there exists in the Fund funds that are less than $100,000,000, the Attorney General may appoint or reappoint a Special Master each time the Attorney General determines there are sufficient funds available in the Fund to compensate eligible claimants, for such period as is appropriate, not to exceed 1 year.

34 U.S.C. § 20144(b).

52.     Defendants have not been forthcoming in disclosing the amount accumulated in the Fund.

53.     While Defendants have posted on the Fund's website a list of cases from which sale proceeds (in criminal cases) and civil penalties, fines, and forfeitures (in civil cases) have been or will be deposited into the Fund, no new information has been posted since September 30, 2019, although the website does indicate that it will be updated after the close of the fiscal year on September 30, 2020.

54.     Plaintiff's counsel has also tried to obtain information about moneys that should be deposited into the Fund via a Freedom of Information Act request that has not been timely complied with by the Department of the Treasury, and which is the subject of a separate but related litigation, *Tolchin v. Department of the Treasury,* DDC Case no. 20-cv-2201 (BAH).

55.     Despite not having provided any information about deposits into the Fund since September 30, 2019, and despite the books not yet being closed on the current fiscal year, the Fund on July 24, 2020 precipitously announced on its website that there will be insufficient funds in the Fund to make a distribution next year. The Fund's website currently says:

> The third-round payments will be the only payments the USVSST Fund authorizes or makes in 2020. The USVSST Fund will not authorize fourth-round payments by January 1, 2021.

> After distributing the amount allocated for the third round, the amount of funds remaining in the USVSST Fund and available for distribution will be insufficient to authorize another round of payments by January 1, 2021, the next potential authorization date under the statutory schedule.

http://www.usvsst.com/index.php (last viewed Sept. 9, 2020) (Exhibit F).

56.     If Plaintiff prevails on the first claim asserted in this action, which would require Defendant to retroactively deposit into the Fund 25% of the enumerated categories of civil penalties, fines and forfeitures during the period of December 18, 2016 through November 21, 2019, and if those funds are not distributed as a supplemental distribution part of the third round

as requested in the second claim for relief herein, then there will certainly be more than $100 million in the Fund.

57.     Moreover, there may organically be more than $100 million in the Fund derived from new criminal forfeitures, civil penalties, fines, and civil forfeitures, even without the funds at issue in the first claim asserted in this action, which will be revealed through discovery in this action, if Defendant Treasury ever responds to Plaintiff's counsel's Freedom of Information Act request, or possibly it will even be revealed after September 30 on the Fund's website.

58.     In the event there is more than $100 million in the Fund, and/or in the event Plaintiff prevails on the first claim asserted in this action resulting in their being more than $100 million in the Fund but those funds are not distributed as a supplemental distribution as part of the third round, then the Attorney General will be required to appoint a Special Master and that Special Master will be required to make a fourth round distribution in 2021.

59.     Plaintiff therefore prays that the Court issue a declaratory judgment holding that the Attorney General is required to appoint a Special Master, and that the Court issue a mandatory injunction pursuant to 5 U.S.C. § 702 compelling the Attorney General to appoint a Special Master, and compelling Defendants, upon appointment of a Special Master, to make a distribution in 2021 in accordance with the USVSST Act.

**FOURTH CLAIM FOR RELIEF**
**FOR A DECLARATORY JUDGMENT HOLDING THAT PAYMENTS OF**
**DISTRIBUTIONS FROM THE FUND ARE REQUIRED TO BE MADE BY**
**JANUARY 1 EACH YEAR GOING FORWARD, WERE REQUIRED TO**
**BE MADE BY MAY 19, 2020 FOR THE THIRD ROUND, AND MUST BE**
**MADE FORTHWITH FOR THE THIRD ROUND**

60.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

61.     The timing of a claim under the USVSST Act is as follows: <u>First</u>, the claimant must submit a claim within 90 days after the enactment of the Act or 90 days after the claimant obtained a final judgment, or in the case of certain narrow groups of claims 90 days after enactment of the Clarification Act, § 34 U.S.C. § 20144(c)(3)(A)(i)(II) and (A)(ii); <u>Second</u>, the Special Master makes a determination if the claim is eligible, § 20144(c)(1); <u>Third</u>, "[t]he Special Master shall authorize…payments," § 20144(d)(4) "not later than one year after December 18, 2015" in the case of the first year, § 20144(d)(2). "on January 1" of subsequent years, § 20144(d)(4)(A), or in the special case of the third round payments (2020), because of the enactment of the Clarification Act, "[t]he Special Master shall authorize third-round payments to satisfy eligible claims under this section not earlier than 90 days, and not later than 180 days, after November 21, 2019, § 20144(d)(4)(B).

62.     For clarity, the text of USVSST Act subsection (d)(4) provides as follows:

**(4) Additional payments**

**(A) In general**

Except as provided in subparagraph (B), on January 1 of the second calendar year that begins after the date of the initial payments described in paragraph (1) if funds are available in the Fund, the Special Master shall authorize additional payments on a pro rata basis to those claimants with eligible claims under subsection (c)(2) and shall authorize additional payments for eligible claims annually thereafter if funds are available in the Fund.

**(B) Third round payments**

The Special Master shall authorize third-round payments to satisfy eligible claims under this section not earlier than 90 days, and not later than 180 days, after November 21, 2019. The Special Master shall accept applications from eligible applicants (consistent with the deadlines for application submission prescribed in subsection (c)(3)) until the date that is 90 days after November 21, 2019.

§ 20144(d).

63.     Subsection (d)(4)(B) was added by the Clarification Act, which was enacted and became effective on November 21, 2019, and opened up the Fund to new claimants, most significantly victims of the September 11, 2001 terror attacks, and required rejiggering of the deadlines for the 2020 distribution to accommodate the new claims.

64.     The timeline for the 2020 distribution under § 20144(d)(4)(B) should have been First, claims submitted by February 19, 2020, which is "the date that is 90 days after November 21, 2019," § 20144(d)(4)(B), and then Second, payments authorized by May 19, 2020, which is "180 days[] after November 21, 2019," *id.*

65.     Instead of following this statutorily-mandated timeline, Defendants invented their own *ad hoc*, undefined, and open-ended timeline, which has resulted in the payments still not being made as of the date of this Complaint, four months after they should have been paid.

66.     The Fund states on its website that:

The USVSST Fund authorized third-round payments by the May 19, 2020 deadline set in the United States Victims of State Sponsored Terrorism Fund Clarification Act. The USVSST Fund has completed issuing claim amount letters to all eligible claimants, and continues to process eligible claims for payment.

http://www.usvsst.com/index.php (last viewed Sept. 9, 2020) (Exhibit F). The website further states:

The USVSST Fund will update this website when the USVSST Fund begins issuing third-round payments on a rolling basis.

*Id.*

67.     In an email, Fund Attorney Advisor Anish Mathur, Esq. stated:

The Justice for United States Victims of State Sponsored Terrorism Clarification Act (Act) specifies that "[t]he Special Master shall authorize third-round payments…not earlier than 90 days, and not later than 180 days, after November 21, 2019." 34 U.S.C. § 20144(d)(4). On or before May 19, 2020 (which falls 180 days after November 21, 2019), the USVSST Fund (Fund) issued letters advising

claimants whether their claims are eligible. <u>By notifying your clients that their claims are eligible, the Special Master "authorized third-round payments"</u> in accordance with the Act. As was the case with the Fund's initial distribution, they will receive separate notification of their individual payment amounts.

(Email from Anish Mathur, Esq., June 5, 2020) (Exhibit G) (emphasis added).

68.     Thus, the Fund—whoever is running it, since there is no appointed special master—has deemed issuing eligibility letters to new claimants to be authorizing payments, and takes the position that as long as eligibility determinations have been issued the Fund has satisfied its obligation to "authorize payments."

69.     By the Fund's flawed logic, the Fund's timeframe to actually make payments to claimants is open-ended, with no deadline at all, and the Fund would even be in compliance if it were to actually pay the claimants in 2050!

70.     The Fund's approach makes no sense, given that eligibility letters are issued only one time after a claimant submits a claim, and are not re-issued in subsequent years to claimants already determined to be eligible. For example, Plaintiff's eligibility letter (Exhibit H) was issued on May 18, 2017, shortly after Plaintiff's claim was submitted. The Fund cannot be deemed absolved of its obligation to authorize payments to Plaintiff by dint of its having issued an eligibility determination to Plaintiff over three years ago.

71.     The only eligibility letters issued by the Fund in 2020 were to new claimants, not the thousands of existing claimants, such as Plaintiff, who had received eligibility letters in previous years.

72.     Thus, even by the Fund's own flawed logic, as to claimants such as Plaintiff who had received eligibility letters before 2020, the Fund did nothing at all in 2020 to authorize payments.

73.     When asked on September 13 "when the third round distributions will actually be paid to claimants," and whether the distributions will be paid before the end of the fiscal year on September 30, 2020, (Email from Robert Tolchin, Esq., Sept. 13, 2020) (Exhibit J), which was just two weeks hence, Mr. Mathur responded only that:

> The USVSST Fund (Fund) will update its website when the Fund begins issuing third-round payments on a rolling basis. As previously stated, the Fund is working diligently to issue payments as soon we can, and cannot provide an exact timeframe.

(Email from Anish Mathur, Esq., Sept. 15, 2020) (Exhibit J).

74.     Mr. Mathur's response is shockingly evasive, disregards the timeframe for payment established in the Act, and provides no inkling of any legitimate process, procedure, or issue causing payment to be delayed.

75.     The Fund's position that issuing eligibility letters by May 19, 2020 was all that was required to comply with the requirement that it "authorize payments" by that date, § 20144(d)(4)(B), notwithstanding that the Fund had not actually transmitted money, enabled the transmission of money, directed anyone to transmit money to any claimant, or authorized money to be transmitted to any claimant, is contrary to the plain language of the statute.

76.     The plain English meaning of "authorize payment" implies that the money will actually be paid, not a precursor step to payment being made at a later unspecified date after other precursor steps are taken.

77.     For example, on December 13, 2018 the Fund issued a letter to Plaintiff informing him of the amount of his distribution for the Second Round distribution (the first distribution Plaintiff was eligible to receive) which was made the first week of January 2019, and instructing him how to complete a direct deposit form to receive payment (Exhibit I). That is authorizing payment.

78.     The position taken by the Fund that it can take any amount of time to actually authorize payments, rather than complying with the date set in the statute, means that absent a ruling from this Court construing the statute the Fund will likely repeat its behavior and this year's fiasco—payments not made more than four months after they were due and no payment date in sight—in future years.

79.     Plaintiff therefore prays that the Court issue a declaratory judgment holding that payments for the Third Round (2020) were due and should have been paid by Defendant Treasury on or before May 19, 2020, and pursuant to 5 U.S.C. § 702 mandating that Defendant Treasury make the Third Round payments forthwith.

80.     Plaintiff further prays that the Court issue a declaratory judgment holding that payments for the future rounds of distributions are due, and pursuant to 5 U.S.C. § 702 mandating that Defendant Treasury make such future payments on or before, January 1 of the year in which the distribution is being made.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment for the relief requested herein, plus attorney's fees and the costs of this action to the extent permitted by law.

Dated: September 16, 2020
      Brooklyn, New York

                              Respectfully submitted,

                              THE BERKMAN LAW OFFICE, LLC
                              *Counsel for Plaintiff*

By:_____

Robert J. Tolchin

(D.C. Bar #NY0088)

111 Livingston Street, Suite 1928

Brooklyn, New York 11201

(718) 855-3627

rtolchin@berkmanlaw.com