IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MURRAY BRAUN, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    No. 1:20-cv-2613-JEB <br> ) |
| UNITED STATES OF AMERICA, et al.,[1] | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

# DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

[1] On December 24, 2020, Jeffrey A. Rosen became the Acting Attorney General of the United States and should be substituted as a party for William P. Barr, former Attorney General, in accordance with Fed. R. Civ. P. 25(d).

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.  The Act Precludes Review of Plaintiff's Claims. ................................................................ 1

II. Plaintiff's APA Claims are Meritless. ................................................................................. 4

    A.  Plaintiff Does Not Challenge a Final Agency Action. ........................................... 4

    B.  Plaintiff's Statutory Interpretation Claims Fail. ...................................................... 6

        1.  The Fund Was Not Required To Retroactively Increase Deposits (Claim One). ................................................................................................. 6

        2.  Because the Clarification Act Applies Prospectively, No "Corrective Distribution" is Required (Claim Two). ..................................................... 8

        3.  Plaintiff Cannot Force the Appointment of a Special Master, Nor Require a Distribution (Claim Three). ....................................................... 8

        4.  Plaintiff's Claims About "Authorization" of Payment Are Misguided and Moot (Claim Four). ........................................................................... 12

III. The Court Must Dismiss the Declaratory Judgment Act Claims. ..................................... 13

CONCLUSION .............................................................................................................................. 14

**INTRODUCTION**

Plaintiff's opposition to the pending Motion to Dismiss invites the Court to ignore the plain language of the Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144 (the "Act"), and instead adhere to Plaintiff's idiosyncratic preferences for how the United States Victims of State Sponsored Terrorism Fund (the "Fund") should operate. Plaintiff's apparent effort to obtain larger payments and more frequent distributions through this action is wholly unsupported by the Act's language. For the reasons set forth below and in detail in Defendants' opening memorandum ("MTD Mem."), Dkt. No. 9, the overwhelming weight of authority supports dismissal of Plaintiff's claims, both because the Court lacks jurisdiction and because Plaintiff's APA claims otherwise fail to state a viable claim for relief. The U.S. Department of Justice ("DOJ") appropriately administers the Act, in furtherance of its mission to compensate United States victims of state sponsored terrorism. The Court should dismiss this action in its entirety.

**ARGUMENT**

**I.    The Act Precludes Review of Plaintiff's Claims.**

Congress has expressly withdrawn this Court's jurisdiction over the Special Master's decisions with regard to compensation from the Fund. 34 U.S.C. § 20144(b)(3)-(4). Indeed, Plaintiff agrees that "[s]pecial master decisions [] are not subject to judicial review under the Act." Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s MTD Opp'n"), Dkt. No. 13, at 16. Instead, Plaintiff responds that his claims are not precluded from judicial review because he alleges that there is currently no duly appointed Special Master (although the current Special Master entered on duty on January 4, 2021, which moots some of Plaintiff's claims, *see* Part II.B.3, *infra*), and "none of Plaintiff's claims even concerns a decision taken by any special master 'with regard to compensation from the Fund,'" Pl.'s MTD Opp'n at 16. Plaintiff's arguments lack merit.

1

Most fundamentally, the fact that Plaintiff's claims here touch upon "non-personal, big-picture issues that transcend Plaintiff's personal claim," Pl.'s MTD Opp'n at 17, is both a normal feature of APA litigation and beside the point. Rather, in order to determine "[w]hether and to what extent a particular statute precludes judicial review," the Court must examine the statute's "express language," as well as "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). As set forth in the Government's opening brief, both the Act's express language and the Act's purpose and structure support a finding of preclusion. MTD Mem. at 12-17. Plaintiff offers no serious rejoinder to these arguments. In fact, he completely fails to respond to the Government's arguments addressing how judicial review of Plaintiff's claims would disrupt Congress's intent and the Act's overall purpose to provide comprehensive and efficient compensation to eligible victims. *Id.* at 15-17.

As to the identity of the Special Master, as explained more fully *infra* in Part II.B.3, Plaintiff's preoccupation with the identity of the person currently serving as Special Master (whether in an appointed or interim capacity) is a red herring.[2] In shielding Special Master decisions made "with regard to compensation from the Fund" from judicial review, 34 U.S.C. § 20144(b)(3), Congress did not limit that preclusion solely to decisions made *in personam* by an appointed special master, as Plaintiff would apparently prefer to read the statute. As discussed above and in the Government's opening brief, such a strained, narrow reading of the statute would be contrary to demonstrated Congressional intent. MTD Mem. at 12-17. Moreover, Plaintiff's reading would invite the Court to open the floodgates of claims-based litigation (a) whenever an interim Special Master is serving; and/or (b) concerning administration of the Fund whenever the Special Master is not personally

---

[2] Plaintiff suggests that the Special Master must be an individual from outside DOJ. Pl.'s MTD Opp'n at 10 and n. 6. There is no such requirement in the Act.

involved. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) ("It is an elementary rule of construction that 'the act cannot be held to destroy itself.'") (quoting *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907)).[3]

Plaintiff also insists that the Government is wrongly "attempt[ing] to portray Plaintiff's claims as an effort to alter the special master's determination about how much money Plaintiff should get from the Fund." Pl.'s MTD Opp'n at 16. But it is the allegations in Plaintiff's own Complaint, not any manipulative portrayal put forward by the Government, which demonstrates that Plaintiff challenges the decisions regarding compensation owed to him by the Fund. The Complaint evinces that Plaintiff is seeking additional money both in the form of a supplemental third-round distribution and a distribution in 2021. *See* MTD Mem. at 13 (citing Compl. ¶¶ 41, 48, 58-59). If Plaintiff is correct, any claimant disappointed by a decision of the Special Master (or with the timing of distributions) could always request that he or she be made whole by a supplemental distribution. If the courts had jurisdiction to consider such demands, the statutory prohibition on review of Special Master decisions would be meaningless.

Nor does it matter that Plaintiff's claims "will benefit all of the thousands of claimants who have submitted claims, and will not specifically benefit Plaintiff in any way." Pl.'s MTD Opp'n at 17. Plaintiff's attempt to distinguish the Second Circuit *Schneider* case is telling in that regard.[4] As

---

[3] Plaintiff's eligibility for compensation from the Fund was reviewed and approved by Special Master Feinberg on May 18, 2017. *See* Exhibit H to Compl., Dkt. No. 1-8. *See also* Exhibit I to Compl, Dkt. No. 1-9 (determining Plaintiff's allocated second-round distribution amount). Plaintiff does not dispute that Special Master Feinberg was the duly appointed Special Master at the time of those determinations. As Plaintiff concedes, once the Special Master determined that Plaintiff was an eligible claimant, he is eligible to receive payments in subsequent rounds. Compl. ¶ 70. *See also* MTD Mem. at 27, n.15.

[4] Plaintiff characterizes the Government's reliance on the *Schneider* case as "a remarkable display of facetiousness." Pl.' MTD Opp'n at 17. That characterization is ironic given that Plaintiff makes virtually no effort to seriously engage with the Government's analysis of that case and its applicability there.

3

explained in the Government's opening brief, that case involved a challenge by two sets of victims to the special master's promulgated regulations about calculating an award amount. MTD Mem. at 14 (citing *Schneider v. Feinberg*, 345 F.3d 135, 138 (2d Cir. 2003)). Notably, the *Schneider* plaintiffs had not even filed claims with the fund, *id.* at 141, and therefore, were not — as Plaintiff characterizes it — "individual claims seeking to challenge decisions of the special master." Pl.'s MTD Opp'n at 17. Just as here, the *Schneider* plaintiffs challenged the fund's construction of certain statutory provisions, 345 F.3d at 142, and any relief granted by the court with respect to the challenged regulations would have necessarily affected how compensation is calculated for all claimants. *See, e.g., id.* at 143 ("The [plaintiffs] seek a declaration that the Act prohibits the Special Master from imposing a cap on compensation awarded to high earners.").

Regardless of how Plaintiff characterizes his claims, the express language of the Act and the overall structure and purpose of the Act preclude challenges to Special Master decisions regarding compensation from the Fund. This includes the distribution and allocation decisions at issue here. Accordingly, the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

**II.     Plaintiff's APA Claims are Meritless.**

Assuming that the Court has subject matter jurisdiction over Plaintiff's claims, Plaintiff fails to adequately plead a violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), because he does not challenge a final agency action, and otherwise does not plausibly allege that the Fund has acted in an arbitrary and capricious manner.

**A.     Plaintiff Does Not Challenge a Final Agency Action.**

Plaintiff offers a single, convoluted response in opposition to the Government's argument that he has failed to challenge a final agency action, as required by 5 U.S.C. § 704: that his APA

4

claims are properly before the Court because he is challenging the Fund's "failure to act" in the manner that the Act requires. Pl.'s MTD Opp'n at 5 (citing 5 U.S.C. § 702).[5]

Plaintiff misses the point. Whether Plaintiff challenges agency action or inaction under Section 702, Plaintiff has not alleged any "direct and appreciable legal consequence" of the agency conduct as required by Section 704. *Cal. Communities Against Toxics v. Envtl. Prot. Agency*, 934 F.3d 627, 637 (D.C. Cir. 2019), *denying reh'g en banc*, 947 F.3d 822 (D.C. Cir. 2020). Indeed, Plaintiff makes no effort to contend with the numerous cases cited by the Government, which distinguish between legal and practical consequences, and make clear that even an agency's definitive interpretation of a statute is not reviewable under the APA if that interpretation does not affect a party's legal rights. MTD Mem. at 19-20 (citing cases).[6]

At most, Plaintiff simply asserts that certain actions were legally required under the Act. *See, e.g.,* Pl.'s MTD Opp'n at 7 (arguing that § 20144(e)(2)(ii) contains a "specific, unequivocal command" to deposit 75% of the specified funds into the Fund) (citing *Public Citizen, Inc.,* 839 F.3d at 1172); *id.* at 10 (arguing that 34 U.S.C.§ 20144(b)(1)(A)(ii) contains "the unequivocal requirement

---

[5] To be sure, Plaintiff does appear to now frame some of his challenges as claims that the Fund has "unlawfully withheld" taking certain actions— i.e., appointing a Special Master. Pl.'s MTD Opp'n at 10 ("In this claim for relief, Plaintiff seeks an order construing the statute and declaring that Defendant Attorney General is required to appoint a special master when the amount in the Fund exceeds $100 million."). Such claims are governed by 5 U.S.C. § 706(1), rather than the final-agency-action rubric of § 704. 5 U.S.C. § 706(1) (providing courts the power to direct agencies to take actions "unlawfully withheld or unreasonably delayed"). As discussed *infra*, those claims are baseless. Part II.B.3, *infra*. But the vast majority of Plaintiff's allegations are grievances that are best described as activities to which the final-agency-action doctrine applies to bar judicial review. MTD Mem. at 20 (citing Compl. ¶¶ 35-36, 55, 66, 67).

[6] Plaintiff curiously cites to a single case, *Pub. Citizen, Inc. v. Fed. Energy Regulatory Comm'n*, 839 F.3d 1165 (D.C. Cir. 2016), where the D.C. Circuit concluded that the challenged agency inaction was not reviewable under the APA because the statutory language at issue granted the agency discretion to decide whether or not to act. *Id.* at 1174. *See* Pl.'s MTD Opp'n at 5. The D.C. Circuit also reaffirmed that a final agency action "must determine rights and obligations or result in legal consequences." *Id.* at 1171.

5

that a special master be appointed when there is more than $100 million in the Fund"). Setting aside that Plaintiff misreads the statute for the reasons set forth in Part II.B.i of the Government's opening brief, it is not enough to merely plead that an action was legally required in order to establish final agency action. *See, e.g.*, *Nat'l Wildlife Fed. v. EPA*, 945 F. Supp. 2d 39, 46-47 (D.D.C. 2013) (reviewing whether action had "legal consequences" as matter of law at the motion to dismiss stage). The Fund communications cited in the Complaint simply relayed information based on the Act's express text, and had no "concrete impact" on Plaintiff's rights with respect to the Fund. *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (no final agency action where the agency's letter "neither announced a new interpretation of the regulations nor effected a change in the regulations themselves. The Letter was purely informational in nature; it imposed no obligations and denied no relief."). MTD Mem. at 19-20.

Accordingly, the Court must dismiss his APA claims because Plaintiff has failed to challenge a final agency action.

**B.     Plaintiff's Statutory Interpretation Claims Fail.**

Plaintiff's statutory interpretation arguments fare no better. With respect to each claim, Plaintiff fails to grapple with the statutory text and case law cited by the Government.

*1.   The Fund Was Not Required To Retroactively Increase Deposits (Claim One).*

Plaintiff continues to insist that so long as the "'after December 18, 2015' language remains part of the statute," Defendants were required to retroactively increase the percentage of certain civil penalties, fines, and forfeitures deposited into the Fund as of the date of the enactment of the Clarification Act. Pl.'s MTD Opp'n at 7. But as the Government has explained, Plaintiff's argument ignores the text of the applicability paragraph and renders it meaningless. The Clarification Act's applicability paragraph explicitly provides that "the amendments made by this section shall take effect on the date of enactment of this Act." Pub. L. No. 116-69, div. B, title VII, § 1701(b)(1)

(Nov. 21, 2019).  *See* MTD Mem. at 22-23 (citing *Landgraf v. USI Film Prod.*, 511 U.S. 244, 288 (1994) (Scalia, J., concurring)).  *See also Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (under "the principle against retroactive legislation," "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity."); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) ("[I]t has become 'a rule of general application' that 'a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication.'") (quoting *United States v. St. Louis, S.F. & T.R. Co.*, 270 U.S. 1, 3 (1926))).[7]  Because the text of the applicability paragraph is clear, Plaintiff's claim for relief in Claim One is untenable and must be dismissed.

Plaintiff's interpretation also cannot be squared with fiscal law principles and Congress' routine handling of appropriations.  Article I, Section 9, Clause 7 of the Constitution prohibits withdrawing funds from the Treasury except pursuant to appropriations made by law.  31 U.S.C. § 1301(d) further prohibits a law from being construed as an appropriation unless it specifically states that an appropriation is made.  In passing the Clarification Act, Congress would have been well aware that the civil fines and penalties collected since December 18, 2015 would have been deposited elsewhere,[8] and that anything beyond the 50% of those fines and penalties that the Act originally required to be deposited to the Fund would likely no longer be available by the time Congress amended the Act four years later in 2019.  The fact that Congress did not pass a new

---

[7] As a technical matter, the United Sates Code version of the statute at 34 U.S.C. § 20144(e)(2)(A)(ii) is not the version with binding legal effect.  *See* 1 U.S.C. § 204(a).  Rather, the definitive legal version is the Public Law version, which provides that "the amendments made by this section shall take effect on the date of enactment of this Act."  Pub. L. No. 116-69, div. B, title VII, § 1701(b)(1) (Nov. 21, 2019).

[8] *See, e.g.,* U.S. Gov't Accountability Off., GAO-16-297, FINANCIAL INSTITUTIONS: Fines, Penalties, and Forfeitures for Violations of Financial Crimes and Sanctions Requirements (2016), https://www.gao.gov/assets/680/675987.pdf (discussing the various funds within the federal government that receive deposits from fines, penalties and forfeitures, and uses of the money by these funds).

appropriations law making additional funds available to cover the retroactive application of the Clarification Act is further evidence that Congress did not intend the amendment to have retroactive effect.

      2. *Because the Clarification Act Applies Prospectively, No "Corrective Distribution" is Required (Claim Two).*

In Claim Two, Plaintiff seeks "a declaratory judgment declaring that the Fund is required to, and mandating that the Fund, distribute the additional 25% that is the subject of the first claim for relief as a supplemental third round distribution." Compl. at 13. Plaintiff concedes that his "second claim for relief assumes that Plaintiff prevails on the first." Pl.'s MTD Opp'n at 8. Thus, the Court must dismiss Claim Two because Claim One fails to state a claim for relief. It bears mentioning, however, that Plaintiff wrongly portrays the Government to be "asking this Court to override the statutory requirements for the sake of administrative convenience." *Id.* at 9. That is not so. First and foremost, the Court should not order "a corrective distribution" because, as explained *supra* with respect to Claim One, none is required by the Act as amended. Second, the Government describes the administrative and operational burden associated with requiring a supplemental distribution as evidence that Congress recognized — as is reflected throughout various provisions in the Act — that processing, authorizing and transmitting payments requires a many-months-long process (and which cannot occur at all if individual claimants are litigating their claims), and cannot be squared with Plaintiff's reading of the Act and requested relief. MTD Mem. at 17, 26-27.

      3. *Plaintiff Cannot Force the Appointment of a Special Master, Nor Require a Distribution (Claim Three).*

In Claim Three, Plaintiff asks the Court to "issue a mandatory injunction . . . compelling the Attorney General to appoint a Special Master, and compelling Defendants, upon appointment of a Special Master, to make a distribution in 2021 in accordance with the USVSST Act." Compl. ¶ 59. *See also id.* at 15 (claim heading describing "Third Claim for Relief for a declaratory judgment

declaring that Defendant Barr is required to, and a ma[n]datory injunction compelling him to, appoint a special master and to make a distribution in 2021 if there is more than $100 million in the fund"). The Act requires the Special Master to "authorize additional payments for eligible claims annually thereafter *if funds are available in the Fund.*" 34 U.S.C. § 20144(d)(4)(A) (emphasis added). Because the Fund has determined that "the amount of funds remaining in the USVSST Fund and available for distribution will be insufficient to authorize another round of payments by January 1, 2021," Compl. ¶ 55, Claim Three fails to state a plausible claim for relief.

Plaintiff argues that the Government "simply ignores the issue" of whether the Attorney General has satisfied 34 U.S.C. § 20144(b)(1)(A)(ii), which provides that "each time there exists funds in excess of $100,000,000 in the Fund, the Attorney General shall appoint or reappoint a Special Master for such period as is appropriate, not to exceed 1 year." Pl.'s MTD Opp'n at 10. The Government has not ignored the issue. Rather, the Government has squarely responded to the claim set forth in Plaintiff's Complaint, which alleges that the appointment of the Special Master is relevant to his claim only insofar as the Special Master must thereafter make a distribution in 2021. Compl. ¶¶ 58, 59. As just explained, the Act does not require the Fund to make a distribution in 2021 because sufficient funds are not currently available. *See* MTD Mem. at 23-25.

Plaintiff's contention that the Fund has violated 34 U.S.C. § 20144(b)(1)(A)(ii) due to the appointment of an interim special master cannot otherwise support a claim for relief under the APA. As a threshold matter, Plaintiff's response at p. 10 suggests that he is attempting to re-characterize Claim Three of the Complaint, ¶¶ 50-59, as alleging that the appointment of the interim special master is an independent claim for relief. The allegations in the Complaint do not support framing Claim Three in that manner. "It is settled law in this circuit that a plaintiff may not raise new allegations [in a motion-to-dismiss opposition]." *Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012); *see, e.g., Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C.2006) ("[T]he

9

Court does not, and cannot, consider claims first raised in the plaintiff's opposition."); *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) ("[P]laintiff may not amend her complaint by the briefs in opposition to a motion to dismiss.").

In any event, Plaintiff does not allege that the interim special master was appointed in a manner inconsistent with the Act. Nowhere does the Act prohibit the appointment of an interim special master. In fact, the Act expressly contemplates that the Fund may operate without a permanent Special Master when "there exists in the Fund funds that are less than $100,000,000." *Id.* § 20144(b)(1)(A)(ii). Here, although that particular condition did not prevail with respect to the third distribution (since the Fund allocated $1.075 billion for third-round payments, *see* Ex. A, Dkt. No. 9-1, at 3), Congress's provision for such a contingency suggests that there is nothing infirm about the Fund continuing to exist and discharging its statutory obligations when a Special Master is not formally appointed. Settled principles of agency law and delegation confirm this result. *Cf. Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 146 (D.D.C.), *appeal dismissed*, No. 19-5042, 2019 WL 1398194 (D.C. Cir. Mar. 23, 2019), *and aff'd*, 920 F.3d 1 (D.C. Cir. 2019), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019), *and cert. denied*, 140 S. Ct. 789, 206 L. Ed. 2d 266 (2020) (reviewing Supreme Court precedent showing that Congress allowed for acting service since the founding).

Further, construing this aspect of Claim Three as challenging agency action "unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1), as Plaintiff appears to attempt to do, Plaintiff's claim is moot because the then-Attorney General appointed the current Special Master, who entered on duty January 4, 2021.[9] *See* http://www.usvsst.com/. "In general, a case becomes

---

[9] Even assuming that Plaintiff alleges that the appointment of a Special Master was delayed, Plaintiff cannot plausibly allege that any delay was unreasonable. *See TRAC v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("In the context of a claim of unreasonable delay, the first stage of judicial inquiry is to consider whether the agency's delay is so egregious as to warrant mandamus."). Under *TRAC*,

moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. [] This occurs when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that [it has] sought." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (internal citations omitted) (dismissing as moot § 706(1) claims that the agency unreasonably delayed processing of applications after agency processed the applications during pendency of the litigation). *See also Ctr. for Biological Diversity v. Kempthorne*, 498 F. Supp. 2d 293, 296 (D.D.C. 2007) (dismissing as moot § 706(1) claims that the agency unreasonably delayed issuing a final decision on a petition after the agency issued such a decision). The relief Plaintiff seeks in this regard is a court order requiring the Attorney General to appoint a Special Master. Pl.'s MTD Opp'n at 9-10. Because the Attorney General has already done so, there is no relief left for the Court to order.

Finally, Plaintiff lacks standing to bring a claim challenging the appointment of an interim special master.[10] For one, he cannot allege an injury-in-fact stemming from the appointment of an

---

courts should consider the following six factors: (1) the time agencies take to act must be governed by a "rule of reason;" (2) whether "Congress has provided a timetable;" (3) delays "are less tolerable when human health and welfare are at stake;" (4) the effect of expediting "on agency activities of a higher or competing priority;" (5) the "interests prejudiced by delay;" and (6) whether there has been agency "impropriety" contributing to the delay. *Id.* at 80. Consideration of these factors weigh heavily in the Fund's favor: the Act is silent as to the timetable by which the Attorney General must appoint the Special Master "each time there exists funds in excess of $100,000,000 in the Fund" (or, in truth, as to *any* timetable subsequent to the initial appointment required by the statute); human health and welfare are decidedly not at stake; Plaintiff was in no way prejudiced by a delay because no distributions were withheld; and there is no allegation — let alone a plausible one — that any "impropriety" contributed to a delay.

[10] Defendants did not raise this issue in the original motion and herein raise it in response to Plaintiff's re-casting his own claim as a direct challenge to the existence of an interim special master. In any event, standing is a jurisdictional ground for dismissal, which may be raised at any time. Fed. R. Civ. P. 12(h)(3). *See Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am.*, 553 F. Supp. 1331, 1341 n.3 (D.D.C. 1983) ("F.R.C.P. 12(h)(3) explicitly provides that a motion or suggestion questioning the court's subject matter jurisdiction may be raised at any time.") (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1350 (1969)).

interim special master. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (May 24, 2016) (internal citation omitted) ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete and particularized.") (internal citation omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist. . . When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term— 'real,' and not 'abstract.'" *Id.* at 1548. Further, Plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.* at 1550. "The concreteness component of injury in fact sharply limits when a plaintiff can establish standing based solely on a violation of his statutory rights. An injury in fact must always be "concrete"—that is, "real" and "de facto," not "abstract."" *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1548). As already explained, Claim Three rests on Plaintiff's conflation of the Act's requirements concerning the administration of the Fund and requirements concerning payments from the Fund. Because the Fund has not improperly withheld any distributions, Plaintiff cannot establish a concrete injury, let alone one that was caused by the interim special master.

    4. *Plaintiff's Claims About "Authorization" of Payment Are Misguided and Moot (Claim Four).*

The parties agree that the Act requires the Fund to "authorize" third-round payments by May 19, 2020. Pl.'s MTD Opp'n at 13. That Plaintiff is dissatisfied that his payment was not transmitted by that date does not change the plain meaning of the word "authorize." 34 U.S.C. § 20144(d)(4)(B). Plaintiff does not cite any case law, dictionary, or any other authority supporting his interpretation of "authorize" to mean "transmit payment." Nor does Plaintiff engage at all with the Government's arguments regarding how his understanding of "authorize" creates both untenable and impractical consequences within the statutory framework. MTD Mem. at 26-27 & n.13. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. Where, as here, that

examination yields a clear answer, judges must stop." *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (internal citation omitted).

Finally, the fact that Plaintiff has since received his third-round payment moots that aspect of Claim Four. *See Conservation Force, Inc.*, 733 F.3d at 1204. Nor should the Court allow Plaintiff to amend his complaint to add "additional plaintiffs [who] would be other claimants represented by the undersigned who have not yet gotten paid." Pl.'s MTD Opp'n at 15, n.8. Such an amendment would be futile. "[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss . . . ." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004). As explained at length *supra* and in the Government's opening brief, Claim Four is meritless because the Act does not require the Fund to transmit payments by a particular deadline. But in any event, as demonstrated by the fact that Plaintiff has already received his third-round payment, the process of transmitting third-round payments is currently ongoing on a rolling basis, *see* http://www.usvsst.com/index.php, and any new allegations by claimants who have not yet gotten paid are likely to quickly become moot as well.

## III. The Court Must Dismiss the Declaratory Judgment Act Claims.

Plaintiff fails to respond to Defendants' arguments explaining why his Declaratory Judgment Act claims fail to state a claim for relief. MTD Mem. at Part II.C. Plaintiff thus concedes these points. *See Citizens for Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 229 (D.D.C. 2009) ("In this district, it is well-established that the failure to respond to an argument in a Motion to Dismiss acts as a concession.").

## CONCLUSION

For the reasons set forth herein and in the Government's motion and memorandum in support, the Court should grant Defendants' motion and dismiss the Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: January 12, 2021                    Respectfully Submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Dena M. Roth
DENA M. ROTH (DC Bar # 1001184)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Room 11204
Washington, DC 20005
Tel: (202) 514-5108
Facsimile:   (202) 616-8460
Email: dena.m.roth@usdoj.gov

*Counsel for Defendants*